PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT D. WIBLY, | ) | CASE NO. 4:09CV1248 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE PEARSON |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Robert D. Wibly seeks judicial review of the Social Security Administration's final decision denying his application for Disability Insurance Benefits and Supplemental Security Income ("benefits").

For the reasons provided below, the undersigned recommends that the Agency's decision denying benefits to Wibly be affirmed.

**I . Overview**

Wibly was born September 4, 1957 and was 50 years old at the time of the hearing before Administrative Law Judge ("ALJ") Peter Beekman. ECF No. 15 at 2. Wibly completed 11th grade, later obtained a GED, and took some college courses. (Tr. 480, 483.) Wibly's past employment includes: plate maker and pressman. (Tr. 483-84.)

The ALJ found that Wibly suffers from the following severe impairments: depressive disorder, hepatitis B (contracted from unprotected sex with drug use), and substance abuse/alcohol abuse. (Tr. 15.) The ALJ did not find that Wibly has an impairment or

(4:09CV1248)

combination of impairments that meets or medically equals the listings. (Tr. 16.)

After reviewing the administrative record as a whole, including the medical records, relevant testimony, and the legal standards applied, the Court finds that the ALJ's decision is based upon appropriate legal standards and supported by substantial evidence.

## II. Procedural History

On September 13, 2005, Wibly filed applications for benefits alleging a disability due to major depression and hepatitis B, as of May 1, 2004. ECF No. 15 at 2. The Agency initially denied Wibly's claims, and again denied the claims upon reconsideration. ECF No. 18 at 1. On November 6, 2006, Wibly filed a request for an administrative hearing which was held on July 2, 2008 in Cleveland, Ohio with Wibly, his counsel, a vocational expert, and a medical expert in attendance. ECF No. 15 at 2.

The ALJ issued a decision denying benefits concluding that Wibly "has not been under a disability, as defined in the Social Security Act, from May 1, 2004 through the date of this decision." (Tr. 22.) Wibly then filed a request for review of the ALJ's decision which the Appeals Council denied. Because the Appeals Council denied Wibly's request for review, the ALJ's October 2008 decision became the final decision of the Agency. Seeking a review of the Agency's final decision denying him benefits, Wibly timely filed a Complaint with this Court asserting the following issue:

> Whether the ALJ decision that claimant has the residual functional capacity to perform jobs in significant numbers is erroneous and not supported by the substantial weight of the evidence.

ECF No. 15 at 1.

(4:09CV1248)

### III. Law and Analysis

#### A. Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court had decided the matter differently, and even if substantial evidence also supported a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the

3

(4:09CV1248)

evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Standard for Establishing Disability

To establish disability under the Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if he does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if he has

(4:09CV1248)

an impairment that meets the listing and the duration requirement. Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work. The claimant bears the burden of proof at steps one through four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At Step Five, however, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC and his age, education, and work experience to determine whether the claimant may work. Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability."). Significantly, he bears the burden of proving disability up to Step Five of the sequential evaluation. *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step

5

(4:09CV1248)

five, which determines whether the claimant is able to perform work available in the national economy"). The burden of proof regarding the establishment of disability onset date lies with the claimant. *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. 20 C.F.R. § 404.1512(c).

### C. Substantial Evidence Supports the ALJ's Finding that a Significant Number of Jobs Exist to Accommodate Wibly's Functional Capacity and Vocational Profile

At Step Four, in consultation with the Vocational Expert, the ALJ determined that Wibly is unable to perform his past relevant work as a plate maker and pressman. (Tr. 21.) With that determination, the burden shifted to the Agency to show that a "significant number" of jobs existed in the national economy that Wibly could perform, consistent with his residual functional capacity, and vocational factors, including age, education, and work experience. (Tr. 21.); 20 C.F.R. § 416.960(c)(1)-(2); *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). Wibly objects to the Vocational Expert's determination that there are a significant number of jobs in the national economy that he could perform and the ALJ's reliance upon that testimony. For the reasons that follow Wibly's objections are not well taken.

#### 1. RFC

The residual functional capacity ("RFC") finding is an administrative assessment of what an individual can still "do despite [his or her] limitations." *See* 20 C.F.R. § 416.945(a)(1); SSR 96-8p. The ALJ applies a legal standard to the medical facts concerning the claimant's

6

(4:09CV1248)

functional abilities when determining an RFC.  *See Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996).  Rendering the ALJ's determination of a claimant's RFC a legal decision rather than a medical one.  *See* 20 C.F.R. § 416.927(e)(2); SSR 96-5p, 61 Fed. Reg. 34471, 34474 (1996).  As such, the final responsibility for deciding issues such as the RFC is reserved to the Commissioner.  20 C.F.R. § 416.946(c); 20 C.F.R. § 416.927(e)(2).

In determining Wibly's RFC, the ALJ appropriately followed the two-step analysis wherein he first determined if mental or physical impairments exist that could reasonably be expected to produce Wibly's symptoms.  (Tr. 18-20.)  After considering the record evidence, the ALJ found that Wibly's impairments could reasonably be expected to produce the alleged symptoms.  (Tr. 19.)  At this point the ALJ was required to evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit Wibly's ability to work.  In completing this task, it was incumbent upon the ALJ to assess the claimant's credibility.[1]

---

[1] It is important to note that pursuant to the substance abuse analysis the ALJ formed two RFC's for Wibly. The ALJ determined that *including his substance abuse*, Wibly ". . . has the residual capacity to perform light work as defined in 20 CR 440.1567 (b) and 416.967(b), meaning he can lift and carry 10 pounds frequently and up to 20 pounds maximum occasionally. He could sit, stand or walk for a total of 6 hours in an 8 our day; no limits on pushing, pulling or use of foot pedals. She [sic] can frequently climb ramps or stairs. He can occasionally use ladders, ropes or scaffolds. He can frequently stoop, kneel, crouch or crawl. He has no manipulative, visual or communications limitations. He must avoid extreme could, smoke, or fumes. He cannot do any complex tasks, but can do simple repetitive tasks. He needs low stress work with no high production quotas or piece work. He can only have minimal interaction with coworkers and the public. This does not exclude interaction, but it should he strictly defined terms and short duration. He cannot engage in arbitration, negotiation, confrontation, or supervision. These limits include limits related to claimant's substance use." (Tr. 18.) (emphasis added)
    *Excluding his substance abuse*, Wibly " . . . can lift and carry 10 pounds frequently and

(4:09CV1248)

## 2. The Credibility Assessment is Integral to an RFC Determination

Generally, it is for the Secretary and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony. *See Heston*, 245 F.3d at 536. Specifically, credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004) (*citing Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Although an ALJ's credibility finding is entitled to great deference, it must nonetheless be supported by substantial evidence. *See King v. Heckler*, 742 F.2d 968, 975 (6th Cir.1984) (an ALJ's adverse credibility finding was not supported by substantial evidence where the claimant's testimony was consistent with uncontradicted medical evidence).

When an individual alleges disabling symptoms, 20 C.F.R. § 416.929 requires the ALJ to follow an outlined process for evaluating these symptoms. The ALJ must determine whether objective medical evidence supports the claimant's allegations regarding the disabling effects of the impairment, *i.e.,* symptoms. *See Villareal*, 818 F.2d at 463. If the ALJ finds that the objective medical evidence does not support the claimant's allegations, the ALJ may not simply

---

up to 20 pounds maximum occasionally. He cannot do any complex tasks, but can do simple repetitive tasks. He needs low stress work with no high production quotas or piece work. He can only have minimal interaction with coworkers and the public. This does not exclude interaction, but it should he strictly defined terms and short duration. He cannot engage in arbitration, negotiation, confrontation, or supervision." (Tr. 18.) (emphasis added)

(4:09CV1248)

reject the claimant's statements, but must consider them in light of the entire record. *Id.* In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record. *See* SSR 96-7p. In the medical evidence, the ALJ should consider seven factors, as they may be relevant to a particular claim.[2] The ALJ need not detail his analysis of each of the seven factors, but should make clear that he or she considered all relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

If the ALJ rejects a claimant's testimony as not being credible, the ALJ must clearly state his reasons so as to make obvious to the individual and to any subsequent reviewers the weight given to the individual's statements and the reason for that weight. *Id.* at 733; SSR 96-7p; *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 94, 95 (6th Cir. 1987).

The ALJ found that Wibly's "statements concerning intensity, persistence and limiting effects of these symptoms [were] not credible . . . ."[3] (Tr. 19-20.) As evidence of Wibly's lack of credibility the ALJ highlighted (1) the inconsistencies in Wibly's testimony regarding previous substance abuse, (2) that Wibly left the nursing home on the weekends and returned carrying

---

[2] The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p.

[3] In fact, the ALJ found that "Claimant's complaints are exaggerated. His complaints are not fully credible. His past substance abuse does not help his credibility." (Tr. 20.)

(4:09CV1248)

bags of laundry, indicating that he had some physical capability to perform lifting[4], (3) that Wibly left the nursing home on a Friday with a surplus of medication and returned without any medication, (4) that Wibly received no mental health counseling while in the nursing home and as late as April 14, 2008 Wibly said he did not need mental health counseling, (5) that there have been no recent reports of suicidal thoughts, and (6) that Wibly was diagnosed with sleep apnea but the record evidence does not show the disorder to be so severe that it would affect Wibly's ability to concentrate so that he cannot work. (Tr. 19-20.)

The ALJ clearly stated his reasons for partially rejecting Wibly's credibility. (Tr. 19-20.) Although the ALJ did not individually discuss each of the seven factors, his written decision demonstrates that he considered the relevant evidence. (Tr. 18-20); *See Cross*, 373 F. Supp. at 733. The ALJ's decision comports with the process outlined in 20 C.F.R. § 416.929. The undersigned defers to the ALJ's determination of credibility, as it is supported by substantial evidence.

### 3. Vocational Expert Testimony

It is within the province of the ALJ to determine whether to rely on the testimony of a vocational expert and such findings are entitled to substantial deference upon review. *See Sias v. Sec'y of Health & Human Servs*, 861 F.2d 475, 480 (6th Cir. 1988) ("[i]t is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony); *See King,* 742 F.2d at 975 (6th Cir. 1984). A vocational expert's testimony can constitute substantial evidence to support the

---

[4] At the time of the hearing in July 2008 Wibly was living in a nursing home after suffering a severe bout of pancreatitis in September 2007. (Tr. 482.)

(4:09CV1248)

ALJ's findings that a claimant is capable of performing a significant number of jobs in the economy.[5] *Bradford v. Sec'y of Dep't of Health & Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam). A Vocational Expert's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). A hypothetical question need only include those impairments that were accepted by the ALJ and may exclude impairments that the ALJ reasonably discredited. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). If a Vocational Expert testifies in response to a hypothetical question that precisely sets forth all the claimant's impairments, his response constitutes substantial evidence for a finding of either disability or nondisability. *Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 247 (6th Cir.1988).

In the instant matter, the ALJ asked the Vocational Expert to respond to more than one hypothetical; the second hypothetical added more limitations to the first. The ALJ then reasonably relied upon the Vocational Expert testimony that was supported by substantial evidence to establish that "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity, including limits

---

[5] In *Hall*, the court outlined criteria for determining whether work exists in significant numbers in the national economy. *Hall*, 837 F.2d 274-75. Those criteria include: (1) level of the claimant's disability; (2) reliability of the Vocational Expert's testimony; (3) reliability of the claimant's disability; (4) distance the claimant is capable of traveling to engage in the assigned work; (5) the isolated nature of the job; and (6) the type and availability of such work. *Id*. The *Hall* court also indicated that ultimately the determination of whether a particular number of jobs is significant should be left to the fact finder's common sense in weighing the statutory language as applied to particular situations. *Hall*, 837 F.2d at 275.

(4:09CV1248)

related to substance abuse," in response to the first hypothetical. (Tr. 21.) *See [Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779-80 (6th Cir. 1987)](.).

> **i. The ALJ Reasonably Relied Upon the Vocational Expert's Testimony regarding the First Hypothetical in finding Wibly not Disabled.**

In his colloquy with the Vocational Expert the ALJ inquired about Mr. Wibly's past relevant work. The Vocational Expert responded that Wibly had been a plate maker from 1995 - 2000 and a pressman from 2003 - 2004. Both jobs were light level exertion and were probably performed at the medium level. The plate maker job is a level six skill level and the pressman is an unskilled two level job. (Tr. 489.)

The ALJ went on to give the Vocational Expert the capabilities and limitations of two hypothetical persons. The first hypothetical follows:

> This person is male, 50 years of age at the present, GED, he has the same work history as Mr. Wibly. This hypothetical person can lift/carry 20 pounds occasionally, 10 pounds frequently. Can stand/walk six out of eight, sit six out of eight. No limit on push, use a ladder, rope or a scaffold. Frequently stoop, kneel, crouch, crawl. No manipulative limitations. No visual or communications limitations. This person should avoid extreme cold, smoke, fumes.
>
> This person also can do no complex tasks, but can do simple repetitive tasks, and they should be low-stress, no high production quotas, no piece work. No work involving arbitration, negotiation, or confrontation, no supervision. This person should have minimal interaction with co-workers and the public, and this is not to exclude such interaction, but it should be on strictly defined terms and for a short duration only. And that would be it.

(Tr. 490.) In response to the first hypothetical, the Vocational Expert found that the hypothetical person could not perform Wibly's past relevant work. The Vocational Expert, however, identified a significant number of jobs that would accommodate Wibly's RFC and vocational

(4:09CV1248)

profile. *Varley*, 820 F.2d at 779-80.  These jobs include: housekeeping/cleaner (2,000 locally, 10,000 Ohio, 200,000 nationally), automatic car wash attendant (600 locally, 3,000 Ohio, 77,000 nationally), and food service worker (900 locally, 4,500 Ohio, 120,000 nationally).  (Tr. 490-91.)

The ALJ posed a second hypothetical which included additional limitations.  The second hypothetical follows:

> Physically the same person as the first.  However, this person should have no interaction with the public and co-workers.  Would not be able to understand, remember or carry out simple instructions.  Would have difficulty responding appropriately to supervision.  Would not be able to tolerate changes, and would have difficulty making judgments that are commensurate with the functions of unskilled work.  Past relevant work availability?

(Tr. 491.)  The Vocational Expert responded that the second hypothetical person could not perform Wibly's past relevant work and that there would be no jobs available in significant numbers.  (Tr. 491.)

Wibly argues that considering the Vocational Expert's response to the second hypothetical, the ALJ should have found that there are no jobs in significant numbers in the national economy that the claimant can perform.  The undersigned finds that the ALJ reasonably credited only those limitations supported by the record as a whole and, based upon those limitations, substantial evidence supports the ALJ's finding of "not disabled."

The ALJ appropriately rejected the following unsupported limitations: (1) Wibly has no ability to interact with the public and co-workers, (2) Wibly has no ability to understand, remember, or carry out simple instructions, (3) Wibly has difficulty responding appropriately to

13

(4:09CV1248)

supervision, and (4) Wibly has difficulty making judgments commensurate with unskilled work.[6] *See* Stanley v. Sec'y of Health & Human Servs., 39 F.3d 115, 118 (6th Cir. 1994).

Wibly claims that the medical evidence demonstrates that he cannot "sustain meaningful interaction with coworkers, supervisors, or the public." ECF No. 15 at 8. Wibly relies upon his own testimony that he does not socialize often or well, his sister's responses to the Social Security questionnaire regarding his social withdrawal and self-isolation, and the opinions of consultative examiner and psychologist, Dr. Donald Degli and Medical Expert, Dr. Gottfried Spring. ECF No. 15 at 8. In March 2006, Dr. Degli opined that Wibly "cannot very well handle the interaction demands with peers, supervisors or the adult public in a competitive work setting," and that "he would do best working alone or as a press operator until he can handle interactions better." (Tr. 227.) During the hearing Dr. Spring testified that Wibly should have relatively minimal and superficial contact with others that does not require continuity and that he should be limited to a "people-scant" environment. (Tr. 488.)

To the contrary, the undersigned finds that Drs. Degli and Spring's medical opinions demonstrate that Wibly is not prohibited from interacting with the public, but rather as Dr. Spring testified, must have "strictly defined terms," and "short duration" in his interactions with others. (Tr. 18, 488.) In fact, these medical opinions very clearly state that Wibly should have *limited contact* or *moderate restrictions* on his ability to interact with others, not that Wibly is excluded from all interaction. (Tr. 227, 488.) Additionally, a State examiner, Robert Wagner,

---

[6] Although the ALJ included an inability to tolerate changes restriction in the second hypothetical, Wibly does not include it in the list of limitations he asserts should have been included in his RFC. Accordingly, the undersigned will not address this restriction.

14

(4:09CV1248)

opined that Wibly had only *moderate restrictions* in his ability to interact appropriately with the general public and get along with co-workers without distracting them.[7] (Tr. 156-69, 228-30.) Mr. Wagner found that Wibly is *not significantly limited* in his ability to ask simple questions, request assistance, or maintain socially appropriate behavior. He also concluded that Wibly would work best alone with *little* contact with the public or co-workers.

Wibly notes that the ALJ found that he is not able to do any complex tasks and is limited to simple repetitive tasks. ECF No. 15 at 8. From that finding Wibly surmises that he is precluded from exercising judgment. ECF No. 15 at 8. Record evidence suggests, however, that Wibly is capable of making judgments commensurate with unskilled work. Specifically, Dr. Degli found that Wibly has the ability and judgment to manage money matters appropriately and that Wibly's ability to make simple work-related decisions was not significantly limited. (Tr. 227-29.) Personnel at a behavior healthcare organization noted that Wibly was doing well taking care of his father. (Tr. 250.) Mr. Wagner opined that Wibly's ability to make simple work-related decision was not significantly limited. (Tr. 228-29.) As an extreme example, even when Wibly was hospitalized for depression and drug abuse he demonstrated coherent thoughts and fair insight and judgment. (Tr. 138.)

Wibly does not directly address two limitations found in the second hypothetical including the ability to understand, remember or carry out simple instructions and difficulty responding appropriately to supervision. Wibly merely makes a conclusory statement at the

---

[7] On April 4, 2006, Mr. Wagner filled out a Psychiatric Review Technique form and a Mental Residual Capacity Assessment form. (Tr. 156-69, 228-30.) On October 5, 2006, Dr. Joan Williams affirmed Mr. Wagner's findings. (Tr. 299.)

15

(4:09CV1248)

beginning and end of his argument, asserting that in light of the Vocational Expert's response to the second hypothetical and the opinions of Dr. Degli and Spring, the ALJ should have found that Wibly could not perform jobs in significant numbers.  ECF No. 15 at 6 & 10.

The record evidence demonstrates, however, that Wibly's conclusory statement regarding his abilities are without merit.  Dr. Degli described Wibly's memory as "good," and opined that Wibly had the ability to understand, remember and follow directions.  (Tr. 226-27.)  Dr. Spring stated that Wibly could perform "simple, low-stress work," and that he does not consider Wibly's past chemical dependancy to be material.  (Tr. 488-89.)  Mr. Wagner found that Wibly's ability to understand and his memory were not significantly limited, and his ability to carry out short and simple instructions and/or detailed instructions is moderately limited.  (Tr. 228-29, 299.)

Dr. Degli stated that Wibly has the ability to follow directions in a competitive workplace and that Wibly is only mildly to moderately impaired in his ability to meet the demands of competitive employment.  (Tr. 227.)  Dr. Spring found that Wibly cannot supervise others but he may be supervised.  (Tr. 488.)  Mr. Wagner opined that Wibly's ability to accept instructions, and respond appropriately to criticism from supervisors is not significantly limited.  (Tr. 229.)

It is the claimant's burden to prove disability, and Wibly has failed to do so.  42 U.S.C. § 423(d)(1)(A).  The ALJ, however, met his obligations (at Steps Four and Five) to determine whether Wibly can perform past relevant work or, in the alternative, whether there are a significant number of jobs in the national economy that Wibly can perform.  While the limitations posed in the second hypothetical lack support, the limitations contained in the response to the first hypothetical are supported by substantial evidence.  The ALJ appropriately

16

(4:09CV1248)

determined that the record evidence as a whole did not support the limitations found in the second hypothetical and that the second hypothetical did not accurately portray Wibly's impairment. Accordingly, the ALJ reasonably chose not to rely upon the limitations in the second hypothetical and, based on the Vocational Expert's responses to the first hypothetical, found that Wibly was is not disabled.

### D. The Affect of Substance Abuse on a Finding of Disability

#### 1. Generally

In The Contract with America Act of 1996 ("Welfare Reform Act"), Pub.L.No. 104-121, 110 Stat. 852, 853 (eff. Mar. 29, 1996), Congress amended the Social Security Act to prohibit the award of benefits to individuals for whom alcoholism or drug addiction is a contributing factor material to their disability determination. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3) (J). The House Report on the Act specifically states that this law was enacted to:

> eliminate payment of cash Social Security and SSI disability benefits to drug addicts and alcoholics, to ensure that beneficiaries with other severe disabilities who are also drug addicts or alcoholics are paid benefits through a representative payee and referred for treatment and to provide additional funding to States to enable recipients to continue to be referred to treatment sources . . . .

H.R. 104-379, 104th Cong., 1995 WL 717402 (Leg.Hist.) at *20 (Dec. 4, 1995).

Section 404.1535 of Title 20 of the Code of Federal Regulations governs whether a claimant's drug or alcohol use is a contributing factor material to the determination of disability. The primary factor driving a drug abuse and alcoholism disability determination is whether the individual would be disabled if he or she stopped using drugs or alcohol. In order to determine whether a claimant's alcohol or drug use precludes them from receiving Social Security benefits

17

(4:09CV1248)

the ALJ must first determine whether a claimant is disabled. 20 C.F.R. § 404.1535(a).  The ALJ must reach the determination regarding the claimant's disability initially using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001); *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001).  "A finding of disability is a condition precedent to an application of [42 U.S.C.] § 423(d)(2)(C).  Obviously, if the claimant is found not disabled, despite whatever limitations he or she has, including those related to substance or alcohol abuse, the question of whether claimant's limitations are impacted by such drug or alcohol use is moot." *Parton v. Commissioner of Social*, 2008 WL 4657086 * 9 (S.D. Ohio, Oct 21, 2008); *Smith v. Astrue*, 2010 WL 907968, *4 (N.D.Ohio, Mar 12, 2010); *Slusher v. Astrue,* 2009 WL 2511936 (E.D.Ky., August 17, 2009) ("These regulations make clear that, because the ALJ found Plaintiff not to be under a disability as defined by the regulations, he was not required to evaluate whether Plaintiff's prior substance abuse was a 'material contributing factor.'")

### 2. Wibly's Substance Abuse Impairment Does *Not* Affect the ALJ's Determination That Wibly is Not Disabled

In the instant matter, the ALJ, after completing the standard five-step approach to determining disability described in 20 C.F.R. § 404.1520, without segregating out any affects that might be caused by Wibly's substance abuse, found that Wibly is not disabled.  The ALJ went on to find that Wibly's RFC including any limitations due to substance abuse was almost identical to Wibly's RFC excluding any limitations caused by his substance abuse.[8]  (Tr. 18.)  The ALJ

---

[8] *See* footnote 1 for full description of both RFCs.

18

(4:09CV1248)

also addressed Wibly's substance abuse in discussing Wibly's credibility. (Tr. 19.) Additionally, the ALJ noted that Wibly's condition improved when he was not abusing substances and that it appeared that Wibly had been in remission for less than two years. (Tr. 20.) Finally, the ALJ found that "if the limits related to substance abuse are removed, there are likely additional jobs the claimant would be able to perform." (Tr. 22.) In sum, with or without the limitations due to substance abuse, the ALJ found Wibly is not disabled.

Accordingly, the question of whether Wibly's limitations' are impacted by substance abuse is moot. *Parton*, 2008 WL 2657086 * 9.

### VI. Conclusion and Recommendation

For the foregoing reasons, the undersigned finds that substantial evidence supports the ALJ's conclusion that Wibly was not under a "disability" as defined by the Act and, therefore, is not entitled to benefits. As the ALJ's decision is well articulated, reflects the use of appropriate legal standards and is supported by substantial evidence, the undersigned recommends that the Agency's final decision denying benefits to Robert D. Wibly be affirmed in its entirety, the matter be dismissed, and that the referral to the undersigned be terminated.

                                            /s/ Benita Y. Pearson
Dated: May 20, 2010                       United States Magistrate Judge

### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).